UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| P. STEPHEN LAMONT,<br>Plaintiff,<br>v.<br>KEVIN J. CONNER, et al.,<br>Defendants. | Case No. 5:18-cv-04327-EJD<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 36, 50, 60 |

Plaintiff P. Stephen Lamont ("Plaintiff") seeks nearly one hundred million dollars in compensatory and punitive damages, injunctive relief, and attorney's fees, against three sets of Defendants: (1) Kevin J. Conner and Conner & Associates, P.C. (collectively "Conner Defendants"); (2) David Krane and Google Ventures (collectively "GV Defendants"); and (3) Catherine Stephanie Straggas (collectively "Defendants").

Plaintiff asserts Defendants misappropriated his trades secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and various state law claims, arising out of an alleged meeting in Menlo Park, California in October 2016. Dkt. No. 1 ("Compl."). Presently before the court are motions to dismiss the complaint for lack of personal jurisdiction and failure to plead viable claims. Dkt. Nos. 36, 50, 60. For the reasons set forth below, Ms. Straggas' motion to dismiss is GRANTED, Conner Defendants' motion to dismiss is GRANTED, and GV Defendants' motion to dismiss is GRANTED. This court has initial subject matter jurisdiction under federal question and supplemental jurisdiction over the remaining state law claims. 28 U.S.C. §§ 1331, 1367(a). This matter is suitable for decision without oral argument. Civ. L.R. 7-1(b).

## I. BACKGROUND[1]

Plaintiff is Chairman and Chief Executive Officer of iviewit Holdings, Inc., d/b/a Arumai Technologies, Inc. Compl. ¶ 5. As the alleged "only true inventor and designer" of "four innovative software product designs" including "Proprietary Streaming Video Protocol, Cloud Based Transcoding and Streaming System for Media Companies, OTT Platform with Social Media Layers for OEMs, and Multiscreen OTT Video Stack for Operators," Plaintiff "owns all rights, title, and interest" of the "compromised assets." *Id*. ¶¶ 42, 53, 60. Plaintiff currently resides at a self-identified "confidential" address in Santa Clara, California.

Plaintiff's relationship with Conner Defendants began in 2014 with an agreement between the parties for accounting services that required the accounting firm Conner & Associates to provide a "compilation" of information such as annual and quarterly balance sheets along with tax return preparations for Plaintiff's Company Arumai Technologies, Inc. Compl. ¶ 1, Ex. A. The accounting firm is located in Newtown, Pennsylvania. Compl. ¶¶ 6-7.

Unrelated to Plaintiff and Conner Defendants' tax-related relationship, Plaintiff and Mr. Conner, CPA and Managing Partner of Conner & Associates, engaged in email correspondence in October of 2016 that included a request from Mr. Conner to Plaintiff to "send Arumai's September 2016 Business Plan for his upcoming trip to Silicon Valley." Compl. ¶ 12. Mr. Conner told Plaintiff that he would be "having dinner and cocktails at the Rosewood on Sand Hill Road." Compl., Ex. B. Mr. Conner requested that Plaintiff send him "a clean, fully updated business plan" so that he could have it in his bag. *Id*. Plaintiff emailed Mr. Conner his Business Plan with "Proprietary and Confidential" marked on each page along with a Non-Disclosure Agreement for signature in preparation for Mr. Conner's dinner. Compl. ¶ 12. Two days later, Mr. Conner emailed Plaintiff—with "Google" in the subject line—stating "I had dinner with the head of Google ventures – a hombre of a college roommate. He now has you on his radar. I am charging you for 2 hours of my time . . ." Compl., Ex. D. Plaintiff responded to Mr. Conner's

---

[1] The background is a summary of the allegations in the Complaint (Dkt. No. 1) that are relevant to Defendants' motions to dismiss.

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS

2

email the same day to inquire about what Mr. Conner meant by "has you on his radar." Compl., Ex. E. In response, Mr. Conner replied that "[t]hey will do a review of the Business Plan and the IP; then they will get back to me as whether they are interested. Simple as that." Compl., Ex. E.

Plaintiff states that on October 7, 2016, Plaintiff emailed Mr. Conner his one page overview of the September 2016 Business Plan and that Mr. Conner then sent it to Google Ventures. Comp. ¶ 16. The overview included "the entire patent prosecution strategy" for his patents numbered "09/587,730, 09/587,026, and 09/630/939" and was also marked "Proprietary and Confidential." Compl. ¶ 16. Plaintiff later emailed Mr. Conner, with "Overview" in the subject line, for confirmation that the Overview was sent to Mr. Conner's "contact." Compl., Ex. G. Mr. Conner replied, "YES" to Plaintiff's email. *Id*.

On November 4, 2016, Mr. Conner emailed Plaintiff in regards to the response he received from his contact. Compl. ¶ 17. Plaintiff requested Mr. Conner's Google Venture contact information to pursue the response on his own. Mr. Conner declined to provide the information. *Id*. ¶ 18. Plaintiff learned shortly thereafter that "Google Inc. had made a move to artificially intelligent solutions in its Cloud platform and that Google invested $4.5M on artificial intelligence research in Montreal," Plaintiff then "noticed Conner" of this information. *Id*. ¶ 21. Mr. Conner did not reply. Plaintiff requested from Conner Defendants "an explanation and restitution of the exposition of $95 million in the unauthorized disclosure of patent and product ideas" allegedly given to Google Ventures at the meeting in California. Dkt. No. 60-1, Decl. Conner ¶ 22.

On November 11, 2016, Ms. Straggas, counsel for Conner Defendants, responded to Plaintiff's email notice to Mr. Conner. Ms. Straggas informed Plaintiff that no meeting between Mr. Conner and Google Ventures had taken place and that at no time did anyone from Conner & Associates provide Plaintiff's information to anyone at Google Ventures. Compl., Ex. I. Ms. Straggas is also located in Pennsylvania. Dkt. No. 36 at 3. Mr. Conner has since admitted he was untruthful when he gave Plaintiff the impression that he had met with the "head" of Google Ventures while in Silicon Valley. Dkt. No. 60-1, Decl. Conner ¶ 14. Mr. Conner also stated he was not actually "in the State of California on October 4, 2016" nor did he meet with David Krane

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
3

or any representative from Google Ventures. *Id*. ¶¶ 11, 12.

Plaintiff states that he received communication in June of 2018 from Daphne Change, General Counsel of GV, and David Kramer, an attorney, that a meeting with Mr. Krane from GV did not take place. Compl. ¶ 25. Mr. Krane, Chief Executive Officer of Google Ventures, submitted a signed affidavit that stated "I do not know and have never met any of the parties to this action. I did not meet with Mr. Conner, on October 4, 2016 or otherwise, and have never communicated with him." Dkt. No. 70-1 at 6.

Based on these allegations, Plaintiff asserts claims for: (1) violation of the Defend Trade Secrets Act of 2016 against all Defendants predicated upon Mr. Conner's failure to obtain a signed non-disclosure agreement when he delivered Plaintiff's business plan to a Google Venture contact; (2) negligence against Conner Defendants and Ms. Straggas under the same theory; (3) tortious interference against Conner Defendants for not forwarding GV contact information to Plaintiff; and (4) breach of fiduciary duties against Conner Defendants by going "outside the normal role of an independent accountant" by disseminating Plaintiff's proprietary and confidential information without the non-disclosure agreement. All Defendants subsequently filed motions to dismiss Plaintiff's claims.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 55 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that a claim "is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
4

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1998). "[M]aterial which is properly submitted as part of the complaint may be considered." *Hal Roach Studios,* 896 F.2d at 1555 n.19. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Federal Rule of Civil Procedure 12(b)(2) allows a party to file a motion to dismiss when there is a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). There are two limitations that restrict a court's power to exercise personal jurisdiction over a nonresident defendant: the constitutional principles of due process and the applicable state personal jurisdiction rule. *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990). The Ninth Circuit has held that because California's personal jurisdictional rule is "coextensive with the outer limits of due process," personal jurisdictional inquiries under California law are constrained solely by constitutional principles. *Id*. at 1361; Cal. Civ. Proc. Code § 410.10.

The Supreme Court has held that constitutional due process is met when a nonresident defendant has sufficient minimum contacts with the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In applying the minimum contacts analysis, a court may exercise either general or specific jurisdiction over a nonresident defendant. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). When the defendant's activities in the forum state are substantial, continuous and systematic, a court may exercise general jurisdiction over the defendant, even if the cause of action is unrelated to defendant's contacts with the forum. *Id*. at 923. A defendant may also be subject to specific jurisdiction if the defendant "has sufficient contacts with the forum state in relation to the cause of action." *Sher*, 911 F.2d at 1361 (citations omitted).

When faced with a personal jurisdiction challenge by the defendant, the plaintiff bears the burden of proof to show that jurisdiction is appropriate. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). When a motion to dismiss is based on written materials without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts. *Id*. In this context, a prima facie showing means that the plaintiff has produced sufficient admissible evidence, that if believed, would establish personal jurisdiction. *China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, No. 05-CV-1793-JW, 2005 U.S. Dist. LEXIS 46137, 2005 WL 1513153, at *1, *3 (N.D. Cal. June 27, 2005) (citations omitted). The Ninth Circuit has also held that a district court shall accept as true uncontroverted allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Love*, 611 F.3d at 608; *Sher*, 911 F.2d at 1361. In doing so however, the court need not assume the truth of mere conclusory allegations. *China Tech. Global Corp.*, 2005 U.S. Dist. LEXIS 46137, 2005 WL 1513153, at *5 (citing *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999)).

### B. Leave to Amend

If the court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d at 1130 (quoting *Doe v. United States*, 58 F.3d at 497). Leave to amend can be properly denied where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).

## III. DISCUSSION

### A. Ms. Straggas' Motion to Dismiss is Granted with Prejudice

Ms. Straggas moves to dismiss Plaintiff's three claims against her under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. No. 36. The complaint alleges that Ms. Straggas' letter, on behalf of Conner

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS

6

Defendants, denying the meeting in Menlo Park ever took place, "subjected her[] to a claim of negligence" and a violation of the Defend Trade Secrets Act. Compl. at 8-12. Plaintiff withdrew his opposition and otherwise did not respond to Ms. Straggas' motion to dismiss. The motion is granted on a lack of response alone. However, the court will review the personal jurisdiction argument.

Plaintiff initially alleged personal jurisdiction is met "because all factual allegations derive from violations of 18 U.S.C. § 1836" and the court has supplemental jurisdiction over the negligence claim. Compl. ¶ 2.

Ms. Straggas' action in writing a letter as counsel, on behalf of Conner Defendants, to Plaintiff at his New York address, does not meet the standard of "substantial, continuous and systematic" as required under personal jurisdiction standards. Additionally, Ms. Straggas is domiciled and employed in Pennsylvania. Dkt. No. 36 at 3. Thus, no general jurisdiction exists. Under specific jurisdiction, Plaintiff relies on Ms. Straggas' letter, informing Plaintiff the event in California did not take place. In viewing the facts most favorable to Plaintiff, it cannot be said that Ms. Straggas consummated any transaction or purposefully directed any of her activities toward the forum. Under these facts, Plaintiff has failed to establish personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ("If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.").

Plaintiff initially filed a response to Ms. Straggas' motion to dismiss (Dkt. No. 37) on August 22, 2018; however, Plaintiff subsequently filed a motion to withdraw Plaintiff's response (Dkt. No. 71) which this court granted (Dkt. No. 72). Thus, Plaintiff does not oppose Ms. Straggas' motion to dismiss.

Accordingly, Plaintiff has not met his burden in satisfying either prong of the personal jurisdiction analysis. Plaintiff's claims against Ms. Straggas are DISMISSED with prejudice.

**B.     Conner Defendants' Motion to Dismiss is Granted with Prejudice**

Conner Defendants seek dismissal of all claims against them for lack of personal jurisdiction, general and specific, and forum non conveniens. Dkt. No. 60. Plaintiff responds by

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
7

stating that personal jurisdiction exists because the injury of misappropriation took place in Menlo Park, California. Dkt. No. 65 ¶ 13. The court agrees with Conner Defendants.

### 1. General Jurisdiction

"General jurisdiction applies where a defendant's activities in the state are 'substantial' or 'continuous and systematic,' even if the cause of action is unrelated to those activities." *Sher*, 911 F.2d at 1361 (citations omitted). "[T]he plaintiff must demonstrate that the defendant has sufficient contacts to 'constitute the kind of continuous and systematic general business contacts that approximate physical presence.'" *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).

Here, Plaintiff's allegations are conclusory and without factual support. Plaintiff alleges that Conner Defendants have "substantial contacts with the District" when they travel to Silicon Valley and spend $1,000 per night at a hotel. Dkt. No. 65 ¶ 13. Plaintiff's statements are mere speculation. Plaintiff argues Conner Defendants have seven clients in the district which amounts to "significant contact" given the firm has only one licensed practitioner. *Id.* ¶ 14. Conner Defendants respond by stating they do have clients with California addresses, however, services provided for them by the corporation is conducted in Pennsylvania. Dkt. No. 60-1, Decl. Conner ¶ 9. Conner Defendants are also not at home in California. Mr. Conner resides in Pennsylvania and Conner & Associates, P.C. is a Pennsylvania corporation. Dkt. No. 60-1, Decl. Conner ¶¶ 2-3. Neither owns any personal property in California. *Id.* ¶¶ 5-6. Mr. Conner holds no bank accounts or an office in California. *Id.* ¶ 10.

Given Plaintiff has not pled sufficient facts to support exercising general jurisdiction over Conner Defendants, the court looks next to whether specific jurisdiction exists.

### 2. Specific Jurisdiction

The Supreme Court has held that a court may exercise specific personal jurisdiction over a defendant when the suit "arises out of or relates to actions by the defendant himself that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
8

(citations omitted). The Ninth Circuit has established a three-part test to determine specific jurisdiction: (1) the defendant must purposefully direct his activities to the forum or to a resident thereof, or must purposefully avail himself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws; (2) the claim must arise out of or relate to defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (citations omitted). Plaintiff bears the burden to meet the first two prongs, then the burden shifts to the defendant to make a compelling showing that an exercise of jurisdiction is unreasonable. *Id.*; *Sher*, 911 F.2d at 1361.

Here, Plaintiff argues he has satisfied the first two prongs because Conner & Associates' has seven clients that are located in California and that "[i]t would be oxymoronical for the Conner Federal defendants to state that they jumped on a flight, traveled 3,000 miles against the easterly flowing tail winds, stayed at the Rosewood Sand Hill at a cost of $1,000 per night just to go to one meeting where they tagged the GV defendants." Dkt. No. 65 ¶ 17. Plaintiff's arguments are speculative and lack substance. Given Conner Defendants' declaration that the meeting never took place, Plaintiff has not met his burden in showing that specific personal jurisdiction exists under these circumstances.

### i. Purposeful Direction

The first prong refers to methods of purposeful availment and purposeful direction. A court typically applies a "purposeful availment" analysis in cases of contract dispute, asking whether the defendant has performed some act in the forum state "thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802. In cases of tortious conduct, a court typically applies a "purposeful direction" analysis, considering the effects of the defendant's conduct. *Schwarzenegger*, 374 F.3d at 802. Here, because Plaintiff's causes of action are tortious in nature, the court will apply a purposeful direction analysis.

"A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
9

the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803. The Ninth Circuit evaluates purposeful direction under a three-part test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). The Calder effects test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. As to the first prong, "an intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). As to the second prong, there is express aiming when a defendant knows his action will have a potentially devastating impact upon a plaintiff who defendant knows lives or works in the forum state. *See id.* at 675.

Plaintiff's sole fact giving rise to personal jurisdiction over the Conner Defendants rests on the alleged meeting in Menlo Park between Mr. Conner and a "head" of Google Ventures. In a motion to dismiss, Plaintiff's allegations are usually taken as true. However, for purposes of personal jurisdiction, the court cannot accept as true allegations stated in a complaint that are contradicted by affidavit. *See Alexander v. Circus Circus Enterprises, Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (quoting *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Here, Plaintiff alleges this meeting took place based on email conversations with Mr. Conner. Mr. Conner subsequently filed a declaration recanting his prior statements to Plaintiff. Mr. Conner states that the meeting never took place, he was not in California on October 4, 2016, nor did he meet with anyone from Google. Additionally, Mr. Krane, CEO of Google Ventures, states in an affidavit that the meeting never occurred, nor is he familiar with any of the parties. In light of Mr. Conner's declaration and Mr. Krane's affidavit, the court may not accept as true Plaintiff's allegation that a meeting took place in Menlo Park. In the absence of well-pleaded facts establishing that a meeting took place in Menlo Park, the court lacks jurisdiction over the Conner Defendants.

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
10

### ii. Claims Arising Out of, or Related to Forum Activities

Turning to the second requirement for specific jurisdiction, the Ninth Circuit has applied a "but for test." *Unocal Corp.*, 248 F.3d at 924. More specifically, the court considers whether the plaintiff's claims would have arisen but for Conner Defendants' contacts with California. *Id.* (citations omitted). As mentioned, Plaintiff's complaint is based on the meeting in Menlo Park. The meeting is the only Plaintiff-related contact Conner Defendants allegedly have with California. Plaintiff alleges his patent ideas were exposed at this meeting, which caused him $95 million in damages. However, given the fact the alleged meeting cannot be taken as true, the but for test cannot be applied.

### iii. Reasonableness

As to the final requirement, because this court has found that Plaintiff has not met the Ninth Circuit's required burden in establishing specific jurisdiction, no further analysis is necessary.

### 3. Forum Non Conveniens

Conner Defendants also move this court to dismiss Plaintiff's claims on the grounds of forum non conveniens because the parties previously litigated part of this matter in the Eastern District of Pennsylvania.[2] Pennsylvania is also where Conner Defendants are located and where their business with Plaintiff existed before his relocation to California. Dkt. No. 60 at 16-17. The court need not address Conner Defendants' forum non conveniens argument because personal jurisdiction does not exist.

Accordingly, because this court does not have personal jurisdiction over the Conner Defendants', their motion to dismiss Plaintiff's claims is GRANTED with prejudice.

---

[2] The court takes judicial notice of Conner Defendants' Exhibits A through D. Dkt. No. 60-2. It appears this action between Plaintiff and Conner Defendants first occurred in the Southern District of New York in 2017. Dkt. No. 65 at 5. The presiding Judge transferred Plaintiff's case to the Eastern District of Pennsylvania finding venue appropriate in the new District. *Id.*; Dkt. No. 60 at 6. In 2017, a court ordered Plaintiff to take a deposition in Pennsylvania. Dkt. No. 65 at 6. Plaintiff states for financial reasons he was unable to attend and withdrew the action. *Id.* Plaintiff, now residing in Santa Clara, California, brings the lawsuit to the Northern District. Similarly, the court takes judicial notice as to GV Defendants' request of Exhibits A through D pursuant to Federal Rule of Evidence 201(b). Dkt. No. 52.

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
11

## C. GV Defendants' Motion to Dismiss is Granted with Leave to Amend

Plaintiff asserts one claim against GV Defendants of trade secret misappropriation under the Defend Trade Secrets Act. Compl. ¶¶ 61-62. GV Defendants move to dismiss the claim on the grounds that Plaintiff fails to appropriately state a Defend Trade Secrets Act claim. Dkt. No. 50. The court agrees.

Congress enacted the Defend Trade Secrets Act in 2016 (the "Act"). *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2, 130 Stat. 376 (2016) (codified as amended at 18 U.S.C. § 1831 et seq.). The Act builds upon the Espionage Act of 1996 and provides exclusive original jurisdiction to the District Courts. *Id*. § 1836. The Act provides a right of civil action to "[a]n owner of a trade secret" intended for use in commerce "that is misappropriated." *Id*. § 1836(b)(1). A "trade secret" is considered "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled . . ." *Id*. § 1839(3). An owner maintains her trade secret if: (1) she takes reasonable measures in keeping it secret, and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means . . . ." *Id*. § 1839(3)(A) and (B). "Misappropriation" of a trade secret occurs when: (A) the trade secret is acquired "by a person who knows or has reason to know that the trade secret was acquired by improper means" or (B) "disclosure or use" occurs by a person without "express or implied consent." *Id*. § 1839(5)(A) and (B).

i. Trade Secret Ownership

"A plaintiff need not 'spell out the details of the trade secret,' *Autodesk, Inc. v. Zwcad Software Co.*, 2015 U.S. Dist. LEXIS 63610, at *13 (N.D. Cal. May 13, 2015). Nevertheless, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
12

boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (2d Dist. 1968)).

Here, Plaintiff's description of his trade secrets as stated in the complaint are not plead with sufficient particularity. Plaintiff alleges he is the "only true inventor and designer" of "four innovative software product designs" including "Proprietary Streaming Video Protocol, Cloud Based Transcoding and Streaming System for Media Companies, OTT Platform with Social Media Layers for OEMs, and Multiscreen OTT Video Stack for Operators," Plaintiff "owns all rights, title, and interest" of the "compromised assets." Compl. ¶¶ 42, 53, 60. Plaintiff's description also lacks boundaries to permit GV Defendants to ascertain where the secrets might lie. Plaintiff states that several of his patent ideas are to "support Plaintiff's design of a Streaming Video Protocol to accompany U.S. Patent No. 09/587,026 that has the earliest priority date of varying transfer rates of digital video considering bandwidth fluctuations detected by the Shannon-Hartley Theorem." *Id*. ¶ 33. Plaintiff's minimal and broad description of his ideas fail to sufficiently identify his trade secret for his claim against GV Defendants. *Cf. Autodesk, Inc.*, 2015 U.S. Dist. LEXIS 63610, at *13-14 (finding sufficient description of a trade secret as "source code which comprises AutoCAD 2007 and 2008 is a trade secret, including those portions of code that underlie the commands, interfaces and program files associated with the dozens of specific features which were wrongfully acquired and used in Defendants' ZWCAD+ 2012 and 2014 programs.").

        ii.    Misappropriation

To show misappropriation, the Act requires a showing of one of two categories: (1) wrongful acquisition, or (2) disclosure or use of the trade secret without consent. 18 U.S.C. § 1839(5)(A) and (B). GV Defendants argue that Plaintiff fails to show any wrongful acquisition and that any supposed secrecy was lost. Dkt. No. 50. at 12.

To wrongfully acquire a trade secret, one must obtain a trade secret while having reason to know that it was obtained through "improper means." *Id*. § 1839(5)(A) ("misappropriation"

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS

13

means "acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means."). Such "improper means" can include lying, paying a bribe, or inducing someone to breach their confidentiality agreement. *Id*. § 1839(6)(A).

Plaintiff has not shown that GV Defendants wrongfully acquired or disclosed any trade secrets. Plaintiff includes in his complaint exhibits of emails where Plaintiff consented to Mr. Conner sharing Plaintiff's business plan with a potential Google contact. Mr. Conner had requested Plaintiff to send him "a clean, fully updated business plan" so that he could have it in his bag when he went to Silicon Valley. Compl., Ex. B. Plaintiff acknowledges that he sent his business plan to Mr. Conner for the purpose of Mr. Conner sharing that plan with the Google contact. Two days later, Mr. Conner emailed Plaintiff—with "Google" in the subject line—stating "I had dinner with the head of Google ventures – a hombre of a college roommate. He now has you on his radar. I am charging you for 2 hours of my time. Pay our Invoice!" Compl., Ex. D. Plaintiff responded inquiring about what Mr. Conner meant by "has you on his radar." Compl., Ex. E. In response, Mr. Conner stated that "[t]hey will do a review of the Business Plan and the IP; then they will get back to me as whether they are interested. Simple as that." *Id*.

Later, Plaintiff followed up with Mr. Conner over email with his one page overview to accompany his business plan that included his patent prosecution strategy. Both the overview and business plan, according to Plaintiff, were marked proprietary and confidential. Plaintiff confirmed with Mr. Conner over email—with "Overview" in the subject line—that the Overview was sent to Mr. Conner's "contact." Compl., Ex. G. Mr. Conner replied in the email, "YES." *Id*. Plaintiff maintains in his complaint and emails his consent to disclosure of trade secrets. Thus, even if the meeting did take place (which all Defendants deny ever occurred), there are no facts to support a theory that Conner or GV Defendants wrongfully acquired Plaintiff's trade secrets.

Similarly, under the second category of misappropriation—disclosure or use of the trade secret without consent—Plaintiff asserts that as a result from the Menlo Park meeting that "Google Inc. had made a move to artificially intelligent solutions in its Cloud platform and that Google invested $4.5M on artificial intelligence research in Montreal." Compl. ¶ 21. Plaintiff's

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
14

complaint states that nine of his "twelve exposed patent ideas" of an "Expert System, Knowledge Base, Neural network Algorithms, and Genetic Algorithms" had "little use[] since its discovery at a conference at Dartmouth College in 1956[.]" Compl. ¶ 19. Plaintiff fails to connect his broad patent ideas to non-party Google, Inc. (or GV Defendants) moving to artificially intelligent solutions within its own Cloud platforms.

Moreover, Mr. Krane, Chief Executive Officer of Google Ventures, has stated by affidavit that he does "not know and have never met any of the parties to this action." Dkt. No. 70-1 at 6. Thus, without more, Plaintiff fails to state a claim that GV Defendants wrongfully acquired and used his trade secrets.

Accordingly, GV Defendants' motion to dismiss is GRANTED. The court will allow Plaintiff an opportunity to amend his complaint. Any amended complaint must be filed no later than April 16, 2019.

## IV. ORDER

For the foregoing reasons, Plaintiff has failed to establish personal jurisdiction over Conner Defendants and Defendant Straggas and has failed to sufficiently plead a claim for misappropriation of trade secrets against GV Defendants.

1. Defendants' requests for judicial notice is GRANTED.
2. Ms. Straggas' Motion to Dismiss (Dkt. No. 36) is GRANTED with PREJUDICE.
3. Conner Defendants' Motion to Dismiss (Dkt. No. 60) is GRANTED with PREJUDICE.
4. GV Defendants' Motion to Dismiss (Dkt. No. 50) is GRANTED with LEAVE TO AMEND.

Plaintiff must file an amended complaint, if any, no later than April 16, 2019.

**IT IS SO ORDERED.**

Dated: March 26, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-04327-EJD
ORDER GRANTING MOTIONS TO DISMISS
15