P. Stephen Lamont
5255 Stevens Creek Boulevard
Santa Clara, CA 95051
Tel.: (914) 217-0038
Email: p.stephen.lamont@gmail.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| **P. STEPHEN LAMONT,** | |
| **Plaintiff** | Docket No. 18-cv-04327-EJD |
| v. | |
| | **SECOND AMENDED COMPLAINT** |
| **ALPHABET, INC., GOOGLE, LLC, GV, AND DAVID KRANE** | |
| **Defendants** | |
| **JURY TRIAL DEMANDED** | |

## SECOND AMENDED COMPLAINT

### NATURE OF THE ACTION

1. This is an action for relief, proximately the result of conduct engaged in by Alphabet, Inc., Google, LLC, GV, and David Krane in violation of 18 U.S.C 1961, *et seq.*, § 18 U.S.C. § 1836 – Defend Trade Secrets Act of 2016.

1

2. This Court has personal jurisdiction over the Federal defendants because all factual allegations derive from violations of 18 U.S.C. § 1836 and for the sake of judicial expediency, this Court has supplemental jurisdiction over all other claims, brought now or ever, that are so related to claims in the actions of the parties within such original jurisdiction that they form part of the same dispute pursuant to 28 U.S.C. §1367.

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question jurisdiction). Jurisdiction is premised upon Defendants' violation of 18 U.S.C. § 1836.

## VENUE

4. Venue is proper in this district pursuant to 28 U.S.C. §§1391 and 1400 because the bulk of the defendants are domiciled in this district and for the Federal Defendants that do not, and for the sake of judicial expediency, this Court has supplemental jurisdiction over the Federal defendants that are so related to claims in the actions of the parties within such original jurisdiction that they form the Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

5. Plaintiff, P. Stephen Lamont (hereinafter "Plaintiff") is a *sui juris* Chairman & Chief Executive Officer of iviewit Holdings, Inc. (d.b.a. Arumai Technologies, Inc.) with a principal place of business at:

53    5255 Stevens Creek Boulevard
54    Santa Clara, Cal. 95051
58    Tel.: (914)-217-0038
60

6. Federal defendant, Alphabet, Inc. is an American multinational conglomerate with principal headquarters at:

72    1600 Amphitheatre Parkway                                                                     ,
      Mountain View, Cal. 94043

7. Federal defendant, Google, LLC is an American multinational technology company that specializes in Internet-related services and products with principal headquarters at:

73    1600 Amphitheatre Parkway                                                                     ,
      Mountain View, Cal. 94043

8. Federal defendant GV is the venture capital investment arm of Alphabet Inc. and provides seed, venture, and growth stage funding to technology companies with a principal place of business at:

   Building1489,
   1489 Charleston Rd.
   Mountain View, Cal. 94043

9. Federal defendant, David Krane (hereinafter "Krane") is a *sui juris* Chief Executive Officer of GV (f.k.a. Google Ventures), who runs a fourth-rate private equity firm, a filler firm, without the benefit of any relevant Bachelor's degree or an M.B.A. from a top 5 business school M.B.A. with a principal place of business at:

74    Building 1489,
      1489 Charleston Rd.
      Mountain View, Cal. 94043

## STATEMENT OF FACTS

10. On March 26, 2019, the District Court granted [36] the Motion to Dismiss with Prejudice of Catherine S. Straggas with Prejudice; Granted [50] the Motion to Dismiss of the so-called GV defendants with Leave to Amend; and Granted [60] the Motion to Dismiss of the so-called Conner Defendants with Prejudice.

11. The District Court agrees with the assertion of the so-called GV defendants that Plaintiff failed to properly plead a claim for misappropriation of trade secrets. Respectfully, when Plaintiff views all docketed moving papers, he begs to differ. In filing this Amended Complaint, Plaintiff relies on two matters of public record and Plaintiff's classical form of artificial intelligence that will proved beyond a reasonable doubt that the Federal defendants know nothing about artificial intelligence but as of October 4, 2016 they acquired it and that it was disclosed to them (See Public Law 114-153): the website of DeepMind acquired by Google; and so called Google "A.I." patent applications and so-called Google "A.I." issued patents published by the United States Patent and Trademark Office. The notion that Google, in either regard, is making use of artificial intelligence at all is questionable. The notion that at the final adjudication of the instant action, including all appeals, that Google will make

use of Plaintiff's classical form of artificial intelligence is very real[1] (it is elementary to conclude that making use of Plaintiff's classical form of artificial intelligence at this juncture would be fool hardy).

**DeepMind**

12. Notwithstanding DeepMind's claim that it:

   is the world leader in artificial intelligence research and its application for positive impact.  We're on a scientific mission to push the boundaries of AI, developing programs that can learn to solve any complex problem without needing to be taught how.

13. This statement by DeepMind is subject to question in its use of the terms "artificial intelligence."

14. What DeepMind does is the creation of deep convolutional formulas neural networks, not even algorithms, to approximate the optimal action-value function. This is not artificial intelligence nor machine learning but can be termed forced learning. However, combine it with Plaintiff's classical form of artificial intelligence (see below) as acquired by the Federal defendants, disclosed to the Federal defendants, and vetted by and army of scientists and engineers employed by the Federal defendants and it would come close notwithstanding missing several elements, hence the Complaint and the Amended Motion for an Order for a Preliminary Injunction.

**Google's Purported "A.I." Patent Applications and "A.I." Issued Patents**

---

[1] Consistent with Alphabet, Inc.'s challenge to regulators in every corner of the globe.

15. In review of published patent application at the United States Patent and Trademark Office and issued patents, the assignee whether it be Federal defendant Alphabet, Inc. or Federal defendant Google, LLC or other subsidiary, make use of a "system" that assigns a task to a node of a network to perform character recognition. In some cases, such an assigned node recognizes a character as, for example, a cat. Upon further investigation, such assigned node concludes that the character is a cat. Thereafter, the assigned node passes such information to the remainder of the nodes on a closed network – this is not artificial intelligence.

16. At best it can be described as forced learning and perhaps machine learning.

17. Therefore, the contention of Counsel for the Federal defendants in general and Ryan Thomas O'Hollaren, Esq, that the Federal defendants have known about artificial intelligence for many years is laughable at best.

## 18 U.S.C. § 1836 - DEFEND TRADE SECRETS ACT OF 2016 -- LEGAL STANDARD

18. Federal legislation came into effect in 1996 with the enactment of The Economic Espionage Act of 1996 ("EEA"). The EEA was in part modeled on The Uniform Trade Secrets Act ("UTSA").

20. On May 11, 2016, President Obama signed the Defend Trade Secrets Act of 2016 ("DTSA") into law, a bill designed to follow on the heels of EEA and means to create a civil cause of action and did create a civil cause of action.

21. Thus, Plaintiff has a private right to this cause of action. The DTSA was passed in light of Congress' understanding that misappropriation of trade secrets is anincreasingly serious problem in need of national attention and states:

22. EEA and DTSA were in part modeled on The Uniform Trade Secrets Act ("UTSA"), a model law drafted by the National Conference of Commissioners on Uniform State Laws but expands UTSA's definition. The EEA and DTSA definition of trade secret follows from Section 1838, paragraph (3):

| | |
|---|---|
| 174 | "[T]he term 'trade secret' means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically graphically, photographically, or in writing if— |
| 175 176 | "(A) the owner therefore has taken reasonable measures to keep such information secret, and |
| 177 178 179 180 | "(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public[.]" |

23. Plaintiff made sure every page of the September 2016 Business Plan, both solutions and OTT platforms was marked proprietary and confidential.

24. With 70% of U.S. households streaming video, defensively protected by Plaintiff's trade secrets, such trade secrets are useful.

25. Therefore, Plaintiff meets the test of DTSA born of EEA which in turn was born of UTSA, ipso facto.

26. Plaintiff supplied Federal defendant Conner with an NDA for signature.

**Plaintiff's Protection of its Classical Form of Artificial Intelligence**

27. It has been established that Plaintiff marked every page in a September 2016 Business Plan as "proprietary and confidential" (see Docket No 6. and Docket No. 100). The District Court agrees with the assertion of the so-called GV defendants that Plaintiff failed to properly plead a claim for misappropriation of trade secrets. Respectfully, Plaintiff begs to differ. In filing this Amended Complaint, Plaintiff relies on two matters of public record: the website of DeepMind acquired by Google; and so called Google "A.I." patent applications and so-called Google "A.I." issued patents published by the United States Patent and Trademark Office. The notion that Google, in either regard, is making use of artificial intelligence at all is questionable. The notion that at the final adjudication of the instant action, including all appeals, that Federal defendant Alphabet, Inc. and subsidiaries will make use of Plaintiff's classical form of artificial intelligence is very real (it is elementary to conclude that making use of Plaintiff's classical form of artificial intelligence at this juncture is fool hardy), hence the Complaint and the Motion for an Order for a Preliminary

Injunction.

28. In various moving papers, it has been established that Plaintiff houses his trade secrets in folders on the secured page of Arumai Technologies, Inc. accessible only by the Administrator, those that the Administrator invites, and those capable of hacking a 15-character password, the password of which is changed every quarter as a third measure of protection. To ensure the veracity of Plaintiff's protection claim, he cannot extend an invite to the Federal defendants, but he is willing to extend an invite to Courtroom Deputy, Adriana Kratzmann.

### 181 Plaintiff's Classical Form of Artificial Intelligence is Useful

29. Several of the compromised patent ideas, for axample, were invented to support Plaintiff's design of a Streaming Video Protocol to accompany U.S. Patent No. 09/587,026 that has the earliest priority date of varying transfer rates of digital video considering bandwidth fluctuations detected by the Shannon-Hartley Theorem. Therefore, the supporting patent ideas have "economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public."

30. Therefore, Plaintiff meets the second test of DTSA born of EEA which in turn was born of UTSA, *ipso facto*. The '026 patent application itself is outside the scope of the instant action.

182 **The Specifics of Plaintiff's Trade Secrets – the Classical Form of Artificial Intelligence**



183

31. The specifics of Plaintiff's trade secrets are:

    a. the use of an Expert System.

    b. The further specifics of Plaintiff's trade secrets are the use of a Knowledge Base to insert bad choices.

    c. The further specifics of Plaintiff's trade secrets are the use of inference engines to reiterate another choice.

    d. The further specifics of Plaintiff's trade secrets are numerous sundry items where in respect to a. to c. describes with reasonable particularity, need not be described with such reasonable particularity under 18 U.S.C. b. (VI).

    e. Where applying a. to d. above, Plaintiff achieves to goal of solving complex problems and at the SAME TIME achieving optimal picture quality, lower bandwidth requirements, and lower storage requirements.

32. Plaintiff is unaware of any product or solution that makes use of an Expert System, Knowledge Base, Inference Engines, and such sundry items to solve the complex problem of making an optimal choice with optimal picture quality, lower bandwidth requirements, and lower storage requirements, yet the Federal defendants acquired such expertise and had it disclosed to them at Rosewood Sand Hill on October 4, 2016 with affording Plaintiff the protection of an Confidentiality Agreement.

33. Plaintiff's classical form of artificial intelligence is applicable to many areas of the Federal defendants' activities – Google Cloud, Google Search, Google TV, and undisclosed projects in Google X. This was the basis for the Complaint in general and was clearly spelled out, with specificity, in the Amended Motion for an Order for a Preliminary Injunction in particular when Plaintiff pled (See Docket No. 83, par 46 a. to f.):

    a. ENJOIN non-party Google LLC from solving complex problems involving large data sets in Google Cloud by the use of an expert system, knowledge base, neural network algorithms, genetic algorithms, or any combination of the aforementioned;

b. ENJOIN non-party Google, LLC from solving complex problems involving large data sets in Google Search by the use of an expert system, knowledge base, neural network algorithms, genetic algorithms, or any combination of the aforementioned;

c. ENJOIN non-party Alphabet, Inc from solving complex problems involving large data sets and re-encoding at various resolutions in Google hardware group's Chromecast by the use of an expert system, knowledge base, neural network algorithms, genetic algorithms, or any combination of the aforementioned;

d. ENJOIN non-party Google, LLC from resurrecting Google TV from solving complex problems involving large user preferences in Google TV Search by the use of an expert system, knowledge base, neural network algorithms, genetic algorithms, or any combination of the aforementioned.

e. ENJOIN non-party Alphabet, Inc from solving complex problems involving large data sets in future product enhancements of Google X by the use of an expert system, knowledge base, neural network algorithms, genetic algorithms, or any combination of the aforementioned;

f. ENJOIN any other product or subsidiary of non-party Alphabet, Inc.

and non-party Google, LLC from solving complex problems involving large data sets by the use of an expert system, knowledge base, neural network algorithms, genetic algorithms, or any combination of the aforementioned.

34. As a Pro-Se Plaintiff, Plaintiff concedes that such reasonable particularity was unintentionally missing from the Complaint, but not the PI Motion, which is assumed as the reason for granting this Amended Complaint by the District Court which Plaintiff appreciates.

35. Kevin Conner's retraction of his 30-day email chain after the filing of the Complaint is not believable nor is his claim of not having business in the District when his email signature clearly indicates he has offices on New York, Pennsylvania, and California.

36. The Federal defendants claim that Mr. Conner was bragging is not believable on its own accord and considering the thin background of Federal defendant Krane who no professional would see the need to brag.

37. The last conversation between Plaintiff and Mr. Conner occurred by telephone on or about November 17, 2016 when Conner telephoned Plaintiff, went around his Counsel Straggas and stated "no disclosures were made" as opposed Mr. Conner's unauthenticated claim that he was not in California during the week of October 2, 2016 or to the November 11, 2016 of Straggas denying a meeting took place.

## PLAINTIFF'S CALCULATION OF DAMAGES

|  |  | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| **Shares outstanding:** |  | 5,632,889 | 5,632,889 | 5,632,889 | 5,632,889 |
| **Earnings per share:** |  | $4.56 | $29.04 | $100.27 | $122.97 |
| **Media Technology P/E Ratio (1):** |  | 40 | 40 | 40 | 40 |
| 2019 Value |  |  |  |  | $223,719,577 |
| # of patent applications/trade secrets |  | 12 | 12 | 12 | 12 |
| 2019 value per trade secret |  | $0 | $0 | $0 | $18,643,298 |
| # of wrongly misappropriated trade secrets: |  | 9 | 9 | 9 | 9 |
| 02/28/2019 damages -- solutions |  |  |  |  | $167,789,682 |
| 02/28/2019 damages -- OTT platforms |  |  |  |  | $35,324,144 |
| Total damages |  |  |  |  | $203,113,826 |
|  |  |  |  |  |  |
| (1) |  |  |  |  |  |
| **Amazon** |  | 88.34 | 88.34 | 88.34 | 88.34 |
| **Apple** |  | 15.60 | 15.60 | 15.60 | 15.60 |
| **Disney** |  | <u>15.21</u> | <u>15.21</u> | <u>15.21</u> | <u>15.21</u> |
| Media Technology P/E |  | 39.72 | 39.72 | 39.72 | 39.72 |

## CONCLUSION

38. At the final adjudication of the instant action including all appeals the hardware group of the Federal defendants is going to conclude and they have already concluded that the best means of performing video search on Google TV is by the use of Plaintiff's classical form of artificial intelligence.

39. At the final adjudication of the instant action including all appeals the hardware group of the Federal defendants is going to conclude and they have already concluded that the best means of performing adaptive ad insertion on Google TV is by the use of Plaintiff's classical form of artificial intelligence. Plaintiff is aware that the sister companies of the Federal defendants have begun to aggregate content and adaptive ad insertion is best done on the server side (where the content is housed on a multimedia server).

40. At the final adjudication of the instant action including all appeals the hardware group of the Federal defendants is going to conclude and they have already concluded that the best means of performing functions is best served by the use of Plaintiff's classical form of artificial intelligence when combined with the general combination formula (see Complaint, Exhibit "A", Schedule 5), the Shannon-Hartley Formula (see Complaint, Exhibit "A", Schedule 6), and other formulas.

41. During Plaintiff's law school career at Columbia Law School, he did all his internships at the U.S. Attorney's Office for the Southern District of New York (White, Mary Jo). Late in his tenure, he was charged with proofreading the indictment of Ramzi Yousef in *U.S.A. v. Ramzi Yousef*.

42. Plaintiff became aware that the government did not have any direct evidence that Yousef constructed a bomb in the parking garage of the World Trade Center. Plaintiff became aware that the government did not have any direct evidence that Yousef lit the fuse of the bomb in the parking garage of the World Trade Center. Plaintiff became aware that the government had no direct evidence that Yousef was even in the parking garage of the World Trade Center.

43. Yet, a grand jury was convened, Yousef was indicted, taken to trial, and convicted on purely circumstantial evidence and other sundry items from Afghanistan to the Philippines. In the instant action as in *Yousef* the apple does not fall far from the tree.

44. Under the premises, Plaintiff has been caused to suffer more than $167 million of

exposure to its artificial intelligence inventions.

45. Further to these premises, Plaintiff has been caused to suffer more than $35 million of exposure in four innovative software product designs supported by the artificial intelligence inventions: Proprietary Streaming Video Protocol, Cloud Based Transcoding and Streaming System for Media Companies, OTT Platform with Social Media Layers for OEMs, and Multiscreen OTT Video Stack for Operators.

46. Further to these premises, as a result of the violations of the Federal defendants, Plaintiff is at risk of an overhang in its shareholders table subjecting Plaintiff to shareholder litigation.

## COUNT ONE
Violation of 18-cv-1836 Defend Trade Secrets Act of 2016
(Alphabet, Inc., Google LLC, GV, and David Krane)

47. Plaintiff repeats and realleges each and every allegation contained in paragraph "8" through "46" as though fully set forth herein.

48. As a result of the Defendants' acts, Plaintiff now suffers and will continue to suffer irreparable injury and monetary damages, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of Two Hundred and Three Million Dollars ($203,000,000) as well as punitive damages, costs, and attorney's fees.

**WHEREFORE,** a judgment is respectfully demanded:

   a. Awarding against each of the individually named Defendants such punitive damages as the jury may impose, but not less than Two Hundred and Seventy Million Dollars ($203,000,000);

   b. Awarding against all Defendants such compensatory damages as the jury may determine, but not less than Two Hundred and Three Million Dollars ($203,000,000);

   c. Awarding reasonable attorney's fees and costs; and,

   d. Granting such other and further relief as this Court deems just and proper.

**JURY TRIAL IS DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 14, 2019
Santa Clara, Cal.


For Plaintiff:

*P. Stephen Lamont*
_____
P. Stephen Lamont